LYMAN E. KLOTZ, Appellant, v. WESLEY M. ANGLE et al., as Executors of CHARLES E. ANGLE, Deceased, Respondents.

LYMAN E. KLOTZ, Appellant, v. LILY B. M. FENN, as Executrix of ALBERT O. FENN, Deceased, Respondent, and Eleven Other Actions against the Same Defendant in Which the Following Named Persons Are Respectively Plaintiffs: MAX LITTMAN, JOSEPH A. PRITCHARD, CHRISTOPHER E. HILTS, GEORGE J. KOBUSCH, AMELIA GATES, EUGENE F. WILLIAMS, JOHN R. PAYKEN, SAMUEL D. ARNOLD, AUGUST L. STOCKE, JOHN W. OTTO and RUTH L. LEGGETT.

Limitation of actions — Missouri (state of) — when Statute of Limitations of another state has run against causes of action based on contract made therein, an action thereon cannot be maintained in the courts of this state — constitutional law — Code Civil Procedure, section 390a, not in conflict with section 2 of article 4 of Federal Constitution — order of publication not granted within sixty days after running of Statute of Limitations of state of Missouri should be vacated and set aside.

1. The complaint in the first above-entitled action embraces four separate causes of action (one of which was dismissed by consent) alleged to have arisen in favor of four several assignors of plaintiff by reason of fraud of defendants' testator and others in the publication of a prospectus pertaining to the sale of bonds, etc., of a corporation followed by subscriptions therefor, and sales made in reliance thereon. On examination of the facts out of which the causes of action arose, and the dates at which these actions were brought, held, first, that the contract between plaintiff's assignors and defendants' testator was entered into in the state of Missouri, and that the nature, validity and legal effect of the same is to be determined by the laws of that state; second, since under the law of Missouri an action for relief on the ground of fraud so far as it affects these transactions must be commenced within five years after the cause of action accrued, the Statute of Limitations of that state had run against all of the causes of action·

*third*, section 390a of the Code of Civil Procedure does not conflict with section 2 of article 4 of the Constitution of the United States, which declares that citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states. Hence, the actions cannot be maintained in the courts of this state by reason of the provisions of that statute barring the prosecution of an action where the statute has run against it in the state where the cause of action originated.

2. Where, upon a complaint setting out the same grounds for recovery as in the first above-entitled action, a summons was sought to be served in the second above-entitled actions brought against another defendant, by publication, under an order made several months after the commencement of the action first above entitled, *held*, that on a motion to set aside the service and to vacate the order of publication on a special appearance for the purposes of the motion only, the defendant was entitled to litigate the legality and validity of the order of publication, and, further, that the order was not granted within sixty days following the time limited for the commencement of an action by the Statute of Limitations of the state of Missouri. Therefore, the Statute of Limitations of that state is a bar to these actions.

*Klotz* v. *Angle*, 166 App. Div. 963, affirmed.

*Klotz* v. *Fenn*, 166 App. Div. 963, affirmed.

(Argued January 18, 1917; decided March 20, 1917.)
(Argued January 18, 1917; decided March 20, 1917.)

APPEAL in the first above-entitled action from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 13, 1915, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court at a Trial Term.

Appeal in the second above-entitled action, by permission, from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 6, 1915, which affirmed an order of Special Term granting a motion to vacate and set aside the service of a summons.

The nature of the actions and the facts, so far as material, are stated in the opinion.

*Clarence W. McKay* for appellant. The cause of action arose when the plaintiff purchased his bonds. (*Northrop* v. *Hill,* 57 N. Y. 351; *Allaire* v. *Whitney,* 1 Hill, 484; *Campbell* v. *Miller,* 56 App. Div. 131; *Pryor* v. *Foster,* 130 N. Y. 171; *Isman* v. *Luring,* 130 App. Div. 845; *Ball* v. *Girard,* 160 App. Div. 619; *Bruner* v. *Martin,* 76 Kan. 862.) The cause of action never arose in the state of Missouri. (*Parmenter* v. *State,* 135 N. Y. 154; *Cayuga County* v. *State,* 153 N. Y. 279; *Sanford* v. *Sanford,* 62 N. Y. 553; *Patterson* v. *Patterson,* 59 N. Y. 574; *Crapo* v. *City of Syracuse,* 183 N. Y. 395.) One at least of the plaintiff's assignors comes within the exception of the statute, and it was an error to dismiss the complaint. (*Matter of Kendrick,* 107 N. Y. 104.) The appearance by the defendant on affidavits contesting the facts alleged in the complaint constitutes a general appearance and the court cannot dismiss the action on a motion involving the merits of the litigation. (*Wynkoop* v. *Van Bensen,* 11 N. Y. Supp. 379.) The cause of action never arose in the state of Missouri. (*Strong* v. *Lewis,* 204 Ill. 35; *Luce* v. *Clark,* 49 Minn. 356; *Lewis* v. *Hyams,* 26 Nev. 68; *Bruner* v. *Martin,* 76 Kan. 862; *Freundt* v. *Hahn,* 24 Wash. 8; *McCormick* v. *Blanchard,* 7 Oreg. 232; *McKee* v. *Dodd,* 93 Pac. Rep. 854; *County of Ulster* v. *State of N. Y.,* 177 N. Y. 189; *Cayuga Co.* v. *State of New York,* 153 N. Y. 279; *Parmenter* v. *State of New York,* 135 N. Y. 154.) The Missouri Statute of Limitations does not apply even if we assume that the cause of action arose in Missouri. (*Isenberg* v. *Rainier,* 145 App. Div. 256; *McKinsey* v. *Hill,* 51 Mo. 303; *White* v. *Blankenbeckler,* 115 Mo. App. 722; *Polk* v. *Allen,* 19 Mo. 467; *Ayers* v. *Hicks,* 57 Mo. 396; *Nelson* v. *Harbule,* 26 Mo. App. 1; *Little* v. *Read,* 75 Mo. App. 266; *Austin* v. *Shipman,* 160 Mo. App. 216; *McMerty* v. *Morrison,* 62 Mo. 140; *Boyce* v. *Pacific Railway,* 168 Mo. 583; *Delaney* v. *Pacific Railway,* 168 Mo. 599.)

*Louis Marshall* and *Arthur W. Weil* for parties similarly situated. The causes of action involved herein arose in the state of New York. (*Northrop* v. *Hill,* 57 N. Y. 351; *Ball* v. *Gerard,* 160 App. Div. 619; *Downey* v. *Finucane,* 205 N. Y. 251; *Green* v. *Sigua Iron Co.,* 88 Fed. Rep. 203; *Jermyn* v. *Searing,* 170 App. Div. 757; *Isman* v. *Loring,* 130 App. Div. 845.) Since it was never possible for appellant's assignors to bring suit against the defendants or their testators in Missouri on the cause of action herein, the Statute of Limitations of New York does not bar the present action, irrespective of the effect of the statutes of Missouri. (*Olcott* v. *Tioga R. R. Co.,* 20 N. Y. 210; *Miller* v. *Bremhan,* 68 N. Y. 83; 7 Hun, 330; *Beer* v. *Simpson,* 65 Hun, 17; *Scudder* v. *Bank,* 91 U. S. 406; *Taylor* v. *Lyme,* 17 App. Div. 517; *Tolandon* v. *Lachenmeyer,* 37 How. Pr. 145; *Gaus* v. *Frank,* 36 Barb. 320; *Power* v. *Hathaway,* 43 Barb. 214; *Crapo* v. *City of Syracuse,* 183 N. Y. 400; *Jacobus* v. *Colgate,* 217 N. Y. 235.) Even if appellant's cause of action arose in Missouri within the meaning of section 390-a, yet the Missouri Statute of Limitations has not barred the cause of action. (Missouri Revised Statutes, 1909, § 191; *Austin* v. *Shipman,* 160 Mo. App. 216; *Little* v. *Read,* 75 Mo. App. 266; *McKinsey* v. *Hill,* 51 Mo. 303; *White* v. *Blankenbeckler,* 115 Mo. App. 722; *Bank of China* v. *Morse,* 168 N. Y. 458.) Section 390-a of the Code of Civil Procedure is unconstitutional in that it conflicts with article 4, section 2, of the Federal Constitution which declares that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." (*Chambers* v. *B. & O. R. R. Co.,* 207 U. S. 142; *I. T. B. Co.* v. *Pigg,* 217 U. S. 91; *Blake* v. *McClung,* 172 U. S. 239; *Anglo-American Provision Co.* v. *Davis Provision Co.,* 191 U. S. 373; *Eingartner* v. *Illinois Steel Co.,* 94 Wis. 70; *State* v. *District Court of Wauseca County,* 126 Mich. 501; *Cofrode* v. *Circuit Judge,* 79 Mich. 332; *Davis* v. *Pierse,* 7 Minn.

13; *Corfield* v. *Coryell,* 4 Wash. C. C. 571; *Paul* v. *Virginia,* 8 Wall. 168.)

*Joseph W. Taylor, James S. Havens* and *Fred A. Robbins* for respondents. Each of the causes of action set forth in the complaint arose in the state of Missouri in favor of a resident thereof, and was barred by the Statute of Limitations of that state long before this action was commenced. (*Northrop* v. *Hill,* 57 N. Y. 351; *Miller* v. *Wood,* 116 N. Y. 351; *Mitchell* v. *Strough,* 35 Hun, 83; *H. Nat. Bank* v. *Lacombe,* 84 N. Y. 367; *Hay* v. *Star F. Ins. Co.,* 77 N. Y. 235; *Steen* v. *N. F. Ins. Co.,* 89 N. Y. 315; *Barnum* v. *M. F. Ins. Co.,* 97 N. Y. 188; *Cooper* v. *U. S. N. B. Assn.,* 132 N. Y. 334; *Creem* v. *Fidelity & Casualty Co.,* 141 App. Div. 493; *Barnes* v. *City of Brooklyn,* 22 App. Div. 520.) The orders of publication were void because the existence of the jurisdictional facts upon which only they could be granted was not shown in the papers upon which they were granted. (*Grannan* v. *W. R. Assn.,* 153 N. Y. 449; *Schenck* v. *Barnes,* 156 N. Y. 316; *Coatsworth* v. *L. V. R. Co.,* 156 N. Y. 451; *Blaschko* v. *Wurster,* 156 N. Y. 437; *Wilson* v. *Collins,* 119 App. Div. 88; *Cupples Env. Co.* v. *Lackner,* 99 App. Div. 231; *Dain's Sons Co.* v. *McNally Co.,* 137 App. Div. 857; *Cousins* v. *Schlichter,* 135 App. Div. 779; *Gay* v. *Ulrichs,* 136 App. Div. 809; *Ottley* v. *Jackson,* 157 App. Div. 222; *Hansen* v. *Amer. Sec. & Tr. Co.,* 159 App. Div. 801; *Murphy* v. *Franklin Sav. Bank,* 131 App. Div. 759; *McLaughlin* v. *McCann,* 123 App. Div. 67; *Empire City Sav. Bank* v. *Silleck,* 98 App. Div. 139; 180 N. Y. 541; *Murphy* v. *Jack,* 142 N. Y. 215; *Matter of Peck* v. *Cargill,* 167 N. Y. 391; *Kennedy* v. *Lamb,* 182 N. Y. 228; *Korn* v. *Lipman,* 201 N. Y. 404.) The defendant was entitled to litigate the regularity and validity of these orders of publication in the manner adopted by her. (*Reed* v. *Chilson,* 142 N. Y. 152; *Davis* v. *Cleveland, C., C. & St. L. R. Co.,* 217 U. S. 157.)

LYMAN E. KLOTZ, Appellant, *v.* WESLEY M. ANGLE et al.,
as Executors, etc., Respondents.

HOGAN, J.   This action was brought by plaintiff as
assignee of several persons, residents of the state of
Missouri, to recover damages for fraud and deceit.   The
complaint alleges that defendant's testator in connection
with one Fenn and others were promoters and organizers of
the United States Independent Telephone Company; that
Mr. Fenn was the agent of defendants' testator and as such
published and circulated a prospectus which was false.
It is unnecessary to analyze the prospectus as the same was
fully considered in *Downey* v. *Finucane* (205 N. Y. 251).

The complaint contains four separate causes of action
alleged to have arisen in favor of four individuals, namely,
Drummond, Beer, Orthwein and Pittman, assignors of
plaintiff, by reason of the falsity of statements contained
in the prospectus, reliance by assignors upon the state-
ments made, followed by subscriptions and payment for
bonds by them in reliance thereon.   The complaint was
dismissed upon the trial as to the *Drummond* case with
the consent of plaintiff.

Upon the trial, the justice presiding, for the purpose of
expediting the trial of the case, suggested that the issue
of the time and place of the contract first be disposed of
before taking up the issue of false representations, which
course was assented to by counsel.   The suggestion as to
the " time " of the contract had especial reference to the
question of the Statute of Limitations pleaded by the
defendants.

The trial justice held that the causes of action arose in
the state of Missouri, and that the Statute of Limitations
was a bar.   The judgment entered upon the decision of
the trial court was affirmed by the Appellate Division.

Mrs. Beer was a resident of the city of St. Louis,
Missouri.   The plaintiff was and is a resident of St. Louis,
Missouri, and was employed as a bond salesman of the

Mississippi Valley Trust Company at St. Louis in the year 1905.

The prospectus was published and circulated in Missouri. The trust company in St. Louis was the agent of Mr. Fenn, solicited subscriptions for bonds and received payments thereon. It was furnished with printed forms of subscription blanks to be filled in by subscribers, also with temporary receipt blanks and allotment letters printed and bound in book form. The temporary receipts and allotment letters were filled out and delivered to subscribers for bonds in Missouri by the trust company, and subsequently the bonds were delivered to subscribers in Missouri by the trust company and the latter received all moneys paid on account of the purchase of bonds. For its services it received a commission. By the terms of the prospectus subscriptions for bonds were to be made upon forms described as subscription letters which were printed, save as to blanks upon same where the subscriber was to indicate the amount paid upon the subscription, the date, signature, etc. Mrs. Beer signed one of the subscription letters under date of October 10th, 1905, at St. Louis. The letter was addressed to " Mississippi Valley Trust Co., representing Albert O. Fenn, Esq., Alliance Bank, Rochester, N. Y." Therein she subscribed four thousand dollars to the proposed issue of bonds to be secured by a proposed indenture of mortgage *" to be approved by you "* and stock voting certificates to be issued under a voting agreement *" to be approved by you."* " For each one thousand dollars subscribed by me I am to receive *if, as and when received by you for delivery,* one thousand dollars of said bonds and a stock trust certificate representing four hundred dollars par value of said stock." Accompanying the subscription was her check for one thousand dollars " to be applied by you " in part payment of the bonds and certificates " when allotted to me " and an agreement to pay the balance due *" on my allotment "* on or before October 31st, 1905. Then fol-

lowed an agreement on her part to forfeit the amount paid by her on the subscription in the event of her failure to make final payment, and the agreement "It is understood you reserve the right *to allot to me* less than the amount subscribed,   * * *."

About October 30th, 1905, an allotment letter addressed to Mrs. Beer, referred to her subscription to the proposed issue of bonds and the amount of same, acknowledged the receipt of one thousand dollars part payment for the bonds and stock allotted to her, notified her that the further sum of three thousand dollars would be due on or before October 31st, 1905, and that upon making such payment she would receive a temporary receipt for the bonds and stock allotted to her upon surrender of the allotment letter. Upon the printed form of the letter appeared the words "Albert O. Fenn by Alliance Bank, agent." The allotment letter delivered disclosed "Alliance Bank" erased by the name of "Mississippi Valley Trust Co." stamped over the same. Mrs. Beer upon receipt of the allotment letter on October 31st, 1905, paid to the Mississippi Valley Trust Company three thousand dollars the balance due on her subscription, surrendered her allotment letter and received a temporary receipt, which in substance certified that upon surrender of the certificate she was entitled to receive "*if, as and when* received by the undersigned for delivery four thousand dollars of the proposed bonds to be dated October 2nd, 1905," also voting trust certificate, representing certain shares of stock to be issued. The temporary receipt was a printed form and was signed "Mississipi Valley Trust Co., by W. G. Lackey, bond officer," in the same manner as the allotment letter.

The allotment letters and temporary receipts were filled out in St. Louis on October 30th and 31st, and there delivered to the subscribers including Mrs. Beer and other assignors of plaintiff by the trust company. Subsequently, as hereinafter referred to, the bonds were in

possession of the trust company in St. Louis and by it delivered to Mrs. Beer as well as to other subscribers.

I conclude that the contract between Mrs. Beer and defendants' testator was entered into in the state of Missouri, and that the nature, validity and legal effect of the same is to be determined by the laws of that state.

When did a cause of action (if one existed) arise in favor of Mrs. Beer? The subscription letter of Mrs. Beer was simply a proposition to take a certain number of bonds proposed to be issued to be secured by a proposed mortgage. It was silent as to any obligation on the part of the telephone company to issue bonds or any undertaking by the promoters that bonds would be issued. In the event that bonds were issued the promoters did not contract to deliver the number of bonds subscribed for, but only such number as might be allotted to a subscriber. The prospectus recited that if no allotment were made, payments made by subscribers would be returned in full.

At the time the allotment was made and the subscribers notified of the same, the arrangement had not ripened into a contract, for as yet the telephone company had not executed the mortgage or issued bonds thereunder. The subscriber was merely to receive for each one thousand dollars subscribed, one thousand dollars of said bonds "if, as and when received by you for delivery." The only obligation assumed by Fenn or his associates was to deliver bonds to subscribers if received by them and when received by them. Upon the receipt of the bonds by Fenn, Mrs. Beer for the first time had a legal right to require a delivery to her of the four thousand dollars of bonds for which she had subscribed, which had been allotted to and paid for by her. The mortgage to secure the bonds was executed November 29th, 1905; the record discloses that March 23d, 1906, the trust company at St. Louis was in possession of $820,000 of bonds received by it from Fenn for delivery to subscribers. The undertaking of the promoters to deliver bonds allotted

on the subscription received "when received by them" then became a fixed obligation. Until such time the negotiations between the parties were not consummated. (*Miller* v. *Wood*, 116 N. Y. 351; *Northrop* v. *Hill*, 57 N. Y. 351; *Hibernia National Bank* v. *Lacombe*, 84 N. Y. 367.) Upon receipt of the bonds by Fenn or his agent, the trust company, the contract being complete, the subscribers were entitled to receive their securities and a duty devolved on the former to deliver the securities which had been paid for. (*Zimmermann* v. *Timmermann*, 193 N. Y. 486.)

The trust company on March 23d, or very soon thereafter, the exact date does not appear in the record, delivered to Mrs. Beer her securities. The cause of action, that is the right to bring an action to redress the alleged wrong, arose in Missouri, March 23d, 1906.

Under the law of Missouri (Revised Laws 1909, section 1889) an action for relief on the ground of fraud must be commenced within five years, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party at any time within ten years of the facts constituting the fraud. It is unnecessary to consider the exception, as the complaint in this action does not allege, nor was proof made upon the trial when, if ever, Mrs. Beer discovered the alleged fraud. Had she discovered it at the time the cause of action arose March 23d, 1906, the term of limitation would expire March 23d, 1911. Mr. Angle was then alive. He died September 11th, 1911. This action was not commenced until February 10th, 1913.

It is argued on behalf of the appellant that the defendants' testator and the defendants being at all times residents of the state of New York, never having been within the state of Missouri after the issuance of the prospectus, and having no property in that state subject to attachment, no suit could have been commenced against the testator or the defendants in Missouri, consequently a

cause of action could not arise in that state against him or them within the meaning of the Statute of Limitations. While the Missouri courts could not acquire jurisdiction of defendants' testator for the reason stated by counsel, nevertheless a cause of action existed in favor of Mrs. Beer in Missouri. Assuming that by reason of non-residence of Mr. Angle in Missouri she was unable to enforce her remedy thereon, the Statute of Limitations of Missouri was not thereby suspended. (*Thomas* v. *Black*, 22 Mo. 330; *Scroggs* v. *Daugherty*, 53 Mo. 497; *Zoll* v. *Carnahan*, 83 Mo. 35; *Mathews* v. *Appleberry*, 57 Mo. App. 615.)

Section 1897, Revised Laws of Missouri, applies only to a cause of action against a resident of Missouri absent therefrom or who has departed from the state.

The courts of this state where defendants' testator resided until his death were available to Mrs. Beer to enforce any claim she might assert against Mr. Angle as fully as the jurisdiction has been invoked and entertained in this action brought by her assignee who is a resident of the state of Missouri. (Decedent Estate Law, Cons. Laws, ch. 13, sections 116, 120.) Had Mrs. Beer, a resident of Missouri, sought to enforce a remedy in the courts of this state against·Mr. Angle, a resident of this state, upon or arising by reason of the contract made in Missouri, she would be required to commence such action within the period of time prescribed by our Code of Civil Procedure, section 390a, which provides:

" Where a cause of action arises outside of this state, an action cannot be brought, in a court of this state, to enforce said cause of action, after the expiration of the time limited by the laws of the state or country where the cause of action arose, for bringing an action upon said cause of action, except where the cause of action originally accrued in favor of a resident of this state. Nothing in this act contained shall affect any pending action or proceeding."

As pointed out, the five years' limitation under the law of Missouri expired March 23d, 1911.

Counsel for appellant asserts that section 390a, above quoted, is unconstitutional in that it conflicts with article 4, section 2 of the Constitution of the United States, which declares that citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states.

In *Robinson* v. *Oceanic Steam Navigation Co.* (112 N. Y. 315, 324) Judge EARL, having under consideration section 1780 of the Code of Civil Procedure, which was asserted to be violative of the same section of the Federal Constitution, after quoting the same, said:

"This section makes no discrimination between citizens, but between residents and non-residents. Without attempting to define the full scope of that constitutional provision, it is sufficient to say that it has no application to a case like this, and there are numerous decisions to that effect. (*Adams* v. *Penn Bank of Pittsburgh*, 35 Hun, 393; *Frost* v. *Brisbin*, 19 Wend. 11; *Lemmon* v. *People*, 20 N. Y. 562; *Haney* v. *Marshall*, 9 Md. 194; *Campbell* v. *Morris*, 3 Harris & McHenry [Md.], 535; *Chemung Canal Bank* v. *Lowery*, 93 U. S. 72; *McCready* v. *Virginia*, 94 id. 391; *Missouri* v. *Lewis*, 101 id. 22.) A construction of the constitutional limitation which would apply it to such a case as this would strike down a large body of laws which have existed in all the states from the foundation of the government, making some discrimination between residents and non-residents in legal proceedings and other matters."

Since that decision this court has applied in like manner section 390a of the Code of Civil Procedure. (*Shipman* v. *Treadwell*, 208 N. Y. 404.) Numerous provisions of the Code of Civil Procedure might be referred to where discrimination is made between residents and non-residents, and the validity of which, together with the power of the legislature to enact the same, has never

been questioned. A careful examination of the cases cited by counsel urging the proposition does not satisfy me that they sustain his argument.

Plaintiff having in the *Beer's* case failed to commence this action until a period nearly two years after the time as stated, the trial justice properly held that the same was barred by the Statute of Limitations.

In the third cause of action set out in the complaint, plaintiff seeks to recover as assignee of one Orthwein, also a resident of Missouri. The trial justice held that cause of action barred by the Statute of Limitations. Without reference to various matters relating to the validity of the assignment of the claims, etc., it is only necessary to state that Orthwein's subscription was made in October, 1905, temporary receipts were issued to him October 31st and November 1st, 1905. In due time his bonds were delivered and receipted for to the trust company by the Orthwein Investment Co., a brokerage corporation in the city of St. Louis, Missouri; the receipt was signed in the name of the company by Orthwein as president, April 2d, 1906.

Upon the trial Orthwein was called as a witness and testified that prior to January 1st, 1907, he had not discovered any of the facts constituting the fraud alleged in the complaint. Assuming as he testified that he first had notice of the fraud January 1st, 1907, then under the exception of the Missouri statute, the five years' limitation would commence to run from that date and expire January 1st, 1912. Before the expiration of that time and on the 7th of September, 1911, Mr. Angle died. Letters testamentary upon his estate were granted in this state January 19th, 1912. Under the law of the state of Missouri the Statute of Limitations is suspended only for the period of time between the death of a party and the issuance of letters testamentary upon the will (*Little* v. *Reid*, 75 Mo. App. 266; *Austin* v. *Shipman*, 160 Mo. App. 217), and the law of Missouri controlling

in this case, the time between the death of Mr. Angle, September 7th, 1911, and January 19th, 1912, a period of four months and twelve days, should be added to the limitation which would then expire May 13th, 1912, or about eleven months prior to the commencement of this action.

The fourth cause of action alleges an assignment to plaintiff by one Pittman, a resident of Missouri, arising out of the same transaction; the trial justice held that the Statute of Limitations was a bar. In the case of Pittman the subscription was dated October 12th, 1905, an allotment letter was issued to him October 30th, 1905, and a temporary receipt October 31, 1905, at which time he paid the balance of the purchase price. Interim bonds were delivered to him early in January, 1906. While Mr. Pittman was not asked when he first discovered the facts constituting the fraud alleged in the complaint, he testified that he attended a meeting of the directors of the telephone company the latter part of October or early part of November, 1906, at which he was given information that led him to the conclusion that he "wanted to get from under as quick as he could," and in consequence of his attendance at said meeting and what transpired there he sold his bonds between October 29th and November 3d, 1906. He testified at some length as to what took place at the meeting and then continued, "From my ordinary knowledge of business affairs I saw that the company was in a very bad condition financially and I didn't see how they could avert a receivership or something of that kind. The financial condition at that time looked to me hopeless, the company was borrowing money and only a small part of the seventeen million dollars as was set out in the prospectus to be sold, and which would give the company a five million working capital, only twelve million dollars had been really subscribed and taken." Without further reference to the evidence of Mr. Pittman, sufficient has been quoted to charge him with knowledge of fraud or at least information which

called upon him to exercise reasonable diligence to discover whether or not he had been defrauded. From his evidence I conclude that he was chargeable with notice of any deceit or fraud practiced on him on October 29th, 1906. Five years from that date was October 29th, 1911. Mr. Angle died September 7th, 1911, or one month and twenty-one days before the Statute of Limitations would expire. Adding that period of time between the date of testator's death and the issuance of letters testamentary as in the *Orthwein* case would bring the date of the expiration of the time limited to commence the action to March 2d, 1912, and for the reasons already stated such action could not thereafter be successfully brought.

The judgment should be affirmed, with costs.

HISCOCK, Ch. J., CHASE, COLLIN, CUDDEBACK and POUND, JJ., concur; CARDOZO, J., concurs in result as to the Beer's cause of action and otherwise dissents.

Judgment affirmed.

---

LYMAN E. KLOTZ, Appellant, *v.* LILY B. N. FENN, as Executrix, etc., of ALBERT O. FENN, Deceased, Respondent, and Eleven Other Actions Against the Same Defendant.

HOGAN, J. The complaint in this action embodies the same causes of action set forth in the complaint in the case of *Klotz* v. *Angle, as Executor, etc.*, decided herewith.

In the present case a summons against the defendant was issued to the sheriff of Monroe county February 13th, 1913. The defendant was then temporarily absent from the state and personal service could not be made on her. On the 23d day of May, 1913, an order of publication was granted. The defendant appeared specially for the purpose of a motion to set aside the service of the summons and to vacate the order of publication. An order was there-